IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00778-REB-MEH

UNITED STATES WELDING, INC., a Colorado corporation,

    Plaintiff,

v.

TECSYS, INC., a Canadian corporation,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Renewed Motion to Dismiss Plaintiff's Complaint and Renewed Motion to Strike [filed September 5, 2014; docket #32]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #33]. The motion renews arguments set forth in Defendant's original motion to dismiss, which was fully briefed, and oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court respectfully RECOMMENDS that Defendant's Motion be **granted in part** and **denied in part** as set forth herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual

## BACKGROUND

Plaintiff United States Welding, Inc. ("USW") initiated this action against Defendant Tecsys, Inc. ("Tecsys") on March 17, 2014. (Docket #2.)

### I.   Facts

The following are factual allegations made by USW in its Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Until approximately 2010, USW ran its business on a twenty-year-old legacy Enterprise Resource Planning 1 software ("ERP") system called WISDM. The WISDM software was stable and provided USW with basic functionality, but it was outdated. It lacked the ability to interface with modem Business Intelligence software2 and was unable to track USW's goods or provide real time analytics regarding financials, sales and distribution. Without modem Business Intelligence functionality, USW was unable to run sophisticated analytics to gain insight into USW's financials. The lack of real time analytics and inability to interface with Business Intelligence software left USW at a disadvantage for modem commercial needs.

In 2008, USW began searching for a "turnkey, out of the box" software system specifically designed for the gas and welding industry to replace its WISDM ERP software. USW required its replacement ERP software to track its goods, utilize real time analytics for financials, sales and distribution, utilize Business Intelligence functionality for financials, and utilize best practices unique to the gas and welding industry.

---

findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Tecsys' sales material stated that "Tecsys' EliteSeries [contains] inherent support of 'best practices' and the ability to extend the system to support our unique requirements. The solution's fit to our industry is 'out of the box' ... ."  Upon learning of USW's interest in new software, Tecsys sent its representatives Steve Fliehman, Francois Huneault, Marie Fournier and Jean-Francois Landry to pitch Tecsys' EliteSeries software solution to USW in order to induce USW to purchase it.  From the outset of its pre-contract interactions with Tecsys, through the sales-cycle beginning May 1, 2008 and culminating with the April 30, 2010 signing of a contract, USW emphasized four primary concerns to Tecsys. Specifically, at Tecsys sales presentations, at informal meetings and on phone conversations, USW advised Tecsys that:

a.    USW had no experience with software implementations, lacked the knowledge or experience necessary to perform such a project by itself and would be relying on Tecsys' expertise, experience, advice, and guidance on even the most basic software implementation issues;

b.    USW had very limited time and resources to support the implementation and maintenance of the EliteSeries software and would be relying on Tecsys to perform and manage the implementation and maintenance with minimal use of USW resources;

c.    USW desired an out of the box, turn key software solution designed for the gas and welding industry that utilized industry best practices and allowed USW to perform substantive financial analysis using sophisticated Business Intelligence functionality;

d.    USW required functionality including but not limited to: a production module that would automatically reflect USW's inventory of cylinders and gas; a fully integrated system that would accurately reflect sales transactions and adjustment transactions and reflect such transactions in customers' accounts; a customer portal that would allow USW's customers

3

to access and utilize account information via the Internet and an e-commerce module.

Tecsys' sales team conducted numerous site visits, surveys and analysis to learn about USW's business processes, needs and concerns and was aware of those needs. Tecsys' response throughout the pre-contract sales-cycle was to represent that it understood each of these concerns and to tout the suitability of Tecsys' services and the suitability of Tecsys' EliteSeries software for USW's needs. Assuring USW that it was familiar with and understood USW's business needs, Tecsys touted its EliteSeries software solution as an out of the box solution for the gas and welding industry that would meet all of USW's business requirements.

In good faith reliance on Tecsys' representations, including those identified below, USW signed Tecsys' software license agreement on April 20, 2010 as well as its attached Order Form and Statement of Work (all of the foregoing constituting the "Agreement") (attached as Exhibit A). Under the Agreement, USW licensed the EliteSeries software and hired Tecsys to implement and maintain it. In the Agreement, Tecsys explicitly agreed that it would: (a) exert diligent good faith efforts to provide Services in a timely fashion; and (b) that the Tecsys software would operate in substantial conformity with the User Manuals or Enhancement specifications.

Unknown to USW at the time, Tecsys was already abandoning the software package it sold USW as outdated and incomplete, and was well along to replacing it with better functioning, less expensive software with more suitable features. In fact, in an email to USW's Kathy Lofgren sent well into the implementation, Tecsys' CEO said, "Some implementations have gone well and some have been difficult . . . our [customer] base has been shrinking. Our current thinking is to slow our push into the [gas and welding] industry until we have our 9.x fully released . . . this will provide us with a platform that is easier to use, simpler to implement, runs on SQL-server and will ultimately

4

be lower cost." Tecsys' management had little interest in continuing to invest in or support the version of the EliteSeries software it licensed to USW. Instead of dedicating resources to USW's implementation, Tecsys was slowing its push into the gas and welding industry and was dedicating its resources into developing a new version of its EliteSeries software. In an acknowledgment of Tecsys' failed push into the industry and the inadequate design of its system, this new version of the EliteSeries software would run on different code and be easier to use, implement and maintain than the version licensed to USW.

Also unknown to USW and contrary to Tecsys' representations, the EliteSeries software was far from an out-of-the-box turnkey solution designed for the gas and welding industry. The reality was that the EliteSeries software did not utilize best practices for the gas and welding industry, was unproven in USW's industry and key functionality had never been used or implemented by any customer in any industry.  Tecsys had no other gas and welding customers that had implemented the same functionality presented to USW.  Tecsys' business model relied on extensive customer involvement and use of customer resources for the successful implementation of the software and the provision of services and maintenance.

Tecsys' push into the gas and welding industry was an abject failure. Tecsys' customer base was dwindling with many customers simply abandoning their implementations due to the software's many problems or were unable to successfully implement the EliteSeries software.  The version of EliteSeries pushed on USW by Tecsys did not utilize Business Intelligence for financials. Further, the Business Intelligence functionality sold with the EliteSeries software was so outdated and obsolete that it could only generate very rudimentary, unsatisfactory reports.  The only way for the Tecsys EliteSeries software to provide the robust Business Intelligence functionality Tecsys had

promised, if at all, was for USW to pay for costly modifications or to upgrade to a new version of Elite. Yet, after spending more that $50,000 on Tecsys' failed promises, the EliteSeries software is incapable of drilling down or investigating USW's financials and cannot even generate a fully functioning financial statement.

Moreover, the EliteSeries software was not a fully integrated system. The EliteSeries software could not accurately enter transactions into its third party cylinder-tracking functionality called Trackabout. Consequently, USW had to inefficiently download transactions and manually compare entries into Elite with those in Trackabout to ensure revenue was not lost and customer accounts were accurate.  The EliteSeries software failed to contain a functioning out-of-the-box production module capable of accommodating a push model of inventory depletion to monitor and analyze USW's inventory of cylinders and bulk gas. The EliteSeries production module was incapable of accurately posting inventory transactions into the software's General Ledger and Production Journal. Even after engaging Tecsys to fix its defective production module, the production module today is only able to marginally operate and remains inaccurate.

Further unknown to USW and contrary to Tecsys' representations, no other customer had used or implemented Tecsys' production module with a push model of inventory depletion.  The EliteSeries software never contained a completed, usable e-commerce module.  Tecsys' customer portal module was not fully functional and no other customer had used or implemented it.  The EliteSeries software was not validated by the FDA for compliance.  Tecsys was a neophyte to the gas and welding industry. The EliteSeries software did not utilize best practices. The software could not generate a federally mandated 1099 form or automatically update standard item costs. The EliteSeries software was not DOT compliant or serial number compliant. In an acknowledgment of

its misrepresentations and the software's failure to meet USW's business needs, Tecsys asked USW to stop utilizing best practices and conform its business processes to the software's limitations.

The EliteSeries software is so deficient that USW cannot use it to execute a month-end close in a commercially reasonable manner and so fragile that USW encounters new and different problems with the software each month-end. Because the EliteSeries software is incapable of reasonably executing a month-end close, USW is forced to dedicate 4 to 5 full-time high salaried employees to monitor the software for errors and hope that Tecsys support is available to try to remedy issues. USW's month-end close went from hours with WISDM to days with Elite.

After installation, Tecsys continuously breached the Agreement by failing to provide services in accordance with the Agreement and failing to provide qualified personnel to perform services. Rather than providing capable, knowledgeable experts to install and fine tune a very complex system, Tecsys' employee Anthony LaBarbara thanked Tecsys for being an unvolunteered guinea pig, remarking that "I want to take this opportunity to thank you for letting me use USW as my training ground. Having spent the last 2 weeks with Karen has given me a lot more confidence and knowledge on our system but more specifically, it has shown me the techniques on how to 'teach.' It wasn 't that I didn 't know our system, it was that I couldn 't teach people how to use it.'"  The Tecsys consultants assigned to train USW in the use of the EliteSeries software had no previous training experience and could not teach people how to use the Elite software. Similarly, the Tecsys consultants responsible for attempting to modify the Elite Software so that it could produce financial statements had no financial or accounting education. Tecsys negligently assigned inexperienced and unqualified consultants to USW who used USW as a training ground - all the while charging USW for the incompetence of Tecsys' staff.

Internal miscommunication, ignorance and confusion at Tecsys was so rampant that one group of Tecsys consultants would modify the EliteSeries software only for another group to undo the modifications resulting in additional costs and delays to USW. When USW tried to utilize the 24/7 support it had paid for, Tecsys refused to provide support and shifted responsibility to an internal Tecsys group called ATS. Though USW had already paid for 24/7 support, Tecsys required USW to pay additional fees for Tecsys' ATS support organization to provide support after normal business hours.

During the system "go-live," Tecsys botched the conversion of data from USW's legacy WISDM system to the EliteSeries. This resulted in a number of crippling problems. The Elite software failed to track or process orders correctly, lost orders, failed to balance a cash drawer and lacked the ability to generate a meaningful financial statement. Instead of using the software it had paid so much money for, USW was forced to manage its business with pen and paper for almost a year following the failed go live and could not even generate a financial statement for 9 months following the failed go-live.

The EliteSeries software only functions with a sophisticated Oracle Database that Tecsys licensed to USW. Tecsys' ATS group agreed to maintain the Oracle database; however, the group simply ignored its maintenance obligations. Tecsys' employees seemingly believed such maintenance services were beneath their level of sophistication and let the Oracle database fail. Tecsys' failure shut down USW's business on: April 18, 2012; April 28, 2012; May 8, 2012; May 10, 2012; May 11, 2012; May 27, 2012; June 6, 2012; June, 20, 2012; August 16, 2012; November 8, 2012; November 22, 2012; June 14, 2013; June 28, 2013; July 2, 2013; July 4, 2013 and July 22, 2013. Without the ability to properly operate its business, USW took orders from its customers using

pen and paper. When USW advised Tecsys of the complete shutdown of its business, Tecsys' blithe response was "[l]et [us] know if you need anything."  Tecsys would only honor its maintenance obligation if USW purchased additional servers at additional expense.  Tecsys' CEO admitted that "There is no question that our team should have been more proactive in managing the Oracle DB."

Tecsys assured USW that by modifying the EliteSeries software USW would finally be able to utilize the Business Intelligence functionality Tecsys had promised USW. Based on Tecsys' assurances, USW again put its trust and reliance in Tecsys and paid Tecsys to modify the software. However, Tecsys failed even to start the project and only bothered to notify USW of its failure to begin the project when USW requested a status update on the project's deadline.  In a drive to extract even more fees from USW, Tecsys advised USW that only after a costly upgrade (not modification) could the software provide the Business Intelligence functionality originally promised to USW during the sales cycle. Privately, Tecsys' Marie Fournier (the third project manager on the USW account) contradicted other Tecsys staff members by warning USW not to upgrade because the next version of Elite was so expensive and so flawed USW was unlikely to get it to work.

The result of Tecsys' conduct was a failed software system that was defectively designed, deficiently installed and incapable of meeting USW's most basic, promised business needs. Because of Tecsys' failures, USW has lost its competitive advantage, its business is worse than before and it now operates financially rudderless. USW has sustained millions of dollars in damages as well as injury to its brand, reputation and relationships with its suppliers and customers. Tecsys, meanwhile, has pocketed over $1.6 million in fees it fraudulently obtained from USW for defective software, defective services and a mismanaged implementation. Rather than refunding the fees received from USW, Tecsys has sought to profit from its misconduct by demanding hundreds of thousands of

dollars to upgrade the Elite software to a version that has never been tested or fully implemented in any industry thus far.

## II.    Procedural History

Based upon these allegations, USW brings the following claims against Tecsys: (1) fraudulent inducement; (2) negligent misrepresentation; (3) gross negligence; (4) willful misconduct; (5) breach of contract; (6) breach of express and implied warranty; (7) breach of the duty of good faith and fair dealing, and (8) breach of fiduciary duty.  USW seeks compensatory and punitive damages, together with pre- and post-judgment interest, costs and attorney's fees.

On May 9, 2014, in response to the Complaint, Tecsys filed a Motion to Dismiss pursuant to Rule 12(b)(2), 12(b)(5), and 12(b)(6), requesting that USW's Complaint be dismissed in part with prejudice and in remaining part without prejudice; alternatively, Defendant requested that the Court quash service of the summons, and that the Court strike the Complaint's demand for punitive damages pursuant to Rule 12(f).  Docket #14.  On July 9, 2014, this Court issued a recommendation that the Motion to Dismiss be granted in part pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process and denied the motion without prejudice as to Defendant's remaining arguments. Docket #29. Since that time, Plaintiff attempted service again.

On September 5, 2014, Tecsys filed the present Renewed Motion to Dismiss informing the Court that "with the exception of the reservation noted in Note 1 above [service effected outside deadline set in Fed. R. Civ. P. 4(m)], Tecsys does not challenge the validity of that service."[2] Motion, docket #32 at 2 n.2.  Based on its original motion, Tecsys makes the following requests: (1)

---

[2]Notably, in its recommendation on the original motion to dismiss, this Court requested that the District Court grant an extension of the Rule 4(m) deadline to allow USW to effect proper service upon Tecsys.  Docket #29 at 7.

dismiss the Complaint in part with prejudice under Fed. R. Civ. P. 12(b)(6) for USW's failure to state claims for relief, (2) dismiss the Complaint in remaining part without prejudice under Fed. R. Civ. P. 12(b)(2)[3] for the Court's lack of personal jurisdiction; and (3) if the Court does not dismiss the entire Complaint, strike USW's request for punitive damages. *Id.* at 2-3. In support of these requests, Tecsys argues that it is not subject to this Court's personal jurisdiction for Claims 1 and 2; Claims 1, 3 and 4 are untimely; Claims 5 and 6 are precluded, in part, by the language of the Licensing Agreement; USW fails to allege Tecsys had any discretion in the performance of the Licensing Agreement necessary for Claim 7; and USW fails to allege a confidential relationship necessary for Claim 8. Tecsys also contends the punitive damages request is premature and should be stricken as contrary to Colorado law.

USW counters that its claims are timely as they were discovered within the limitations period; furthermore, USW asserts Tecsys is estopped by the doctrine of equitable tolling from claiming a limitations defense. USW further argues that its Claims 3 and 4 are not duplicative of Claim 2, that it has properly pled its claims of breach of fiduciary duty and breach of good faith and fair dealing, and that is contract and warranty claims are not precluded by the Licensing Agreement. Finally, USW contends that it has properly alleged a substantial portion of Tecsys' conduct giving rise to Claims 1 and 2 occurred in Colorado and, thus, this Court has personal jurisdiction over Tecsys.

Tecsys replies that USW does not dispute that its punitive damages claims must be stricken and, thus, concedes that they must be. Further, Tecsys believes USW fails to dispute the

---

[3]In its motion, Tecsys cites Fed. R. Civ. P. 12(b)(5) but, due to the qualified admission of proper service and the context of Tecsys' remaining arguments, the Court construes Tecsys' request to be made pursuant to Rule 12(b)(2).

untimeliness of the willful misconduct and gross negligence claims and argues improperly that the claims sound in contract.  As for the fraud claim, Tecsys contends that USW fails to allege the majority of elements necessary to show equitable estoppel and for the fiduciary duty claim, USW does not dispute it cannot establish a pre-contractual confidential relationship.  Likewise, Tecsys states that USW does not dispute its arguments concerning the Licensing Agreement.  Finally, Tecsys repeats its argument that USW fails to allege facts supporting this Court's jurisdiction over Tecsys for USW's claims 1 and 2.

## LEGAL STANDARDS

### I.  Dismissal under Fed. R. Civ. P. 12(b)(2)

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted).

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

12

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

Where nationwide service of process is not authorized by any statute supporting claims in the case, a court may assert personal jurisdiction "to the extent allowed by the state in which the district court sits." *SCC Communs. Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002). Therefore, Fed. R. Civ. P. 4(k)(1)(A) governs this Court's authority to exercise personal jurisdiction over Defendant as an out-of-state defendant. Rule 4(k)(1)(A) provides that "[s]erving a summons ... establishes personal jurisdiction over a defendant ... (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

"Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the Court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the Court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment ...." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) (citations omitted). However, in Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (en banc).

13

## II.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more

14

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

The Court will begin by determining whether this Court has personal jurisdiction over Tecsys for Plaintiff's Claims 1 and 2.  If it does, the Court will next analyze whether USW states plausible claims for relief against Tecsys.

## I.   Personal Jurisdiction

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted).  If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case.  *Id.* (citations omitted).  "This analysis is fact specific."  *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v.*

*Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

In addition to examining Defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Communs., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

A.   General Jurisdiction

16

General jurisdiction, unlike specific jurisdiction, subjects a defendant to a court's personal jurisdiction even when the controversy is not related to the defendant's activities in the forum. Specifically, "when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Hall*, 466 U.S. at 414. However, these contacts must be "continuous and systematic." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (quoting *Hall*, 466 U.S. at 416).

According to the allegations in the Complaint, "USW is a Colorado corporation with its principal place of business in Denver, Colorado" and "Tecsys ... is a publicly traded Canadian corporation with its principal place of business at 1 Place Alexis Nihon, Suite 800, Montreal, Quebec Canada H3Z 3B8 and with its United States headquarters located at 1001 Avenue of the Americas, 4th Floor, New York NY 10018." Complaint, ¶¶ 2-3, docket #2. Tecsys was properly served pursuant to the Hague Convention in Montreal, Canada. Notice of Filing, docket #35.

In support of its first two claims for relief, USW alleges that "[i]n 2008, USW began searching for a 'turnkey, out-of-the-box' software system" and "[u]pon learning of USW's interest in new software, Tecsys sent its representatives Steve Fliehman, Francois Huneault, Marie Fournier and Jean-Francois Landry to pitch Tecsys' EliteSeries software solution to USW in order to induce USW to purchase it." USW does not allege that Tecsys maintained offices, had bank accounts or other property, or was registered to do business in Colorado. In fact, Tecsys attests that it "has no employees or office locations in the United States." Declaration of Marion Soumagne, ¶ 3, docket #14-1. USW does not dispute this information. Because there are no allegations or other information

17

characterizing Tecsys' contacts with Colorado as "continuous and systematic," the Court recommends finding that USW has failed to make a prima facie showing that this Court has general personal jurisdiction over Tecsys. *See SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202-03 (D. Colo. 2002) (noting that where the only contacts are sending and receiving of electronic communications and the defendant has entered the forum state to discuss details of a contract, courts have found no personal jurisdiction).

     B.    <u>Specific Jurisdiction</u>

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160. With respect to this question, Colorado's long-arm statute provides, in pertinent part,

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state.

Colo. Rev. Stat. § 13-1-124(1).

USW alleges that Tecsys is subject to specific personal jurisdiction by its conduct and by the Licensing Agreement, which is at issue in this litigation:

> Defendant Tecsys is subject to in personam jurisdiction in Colorado, as a substantial part of the events, misrepresentations, and/or omissions giving rise to the claims occurred within this District. In addition, some of the claims in this case involve a contract between the parties in which they consented to the personal jurisdiction of the state and federal courts located in Denver, Colorado; and agreed that all causes

of action arising out of the contract or the relationship of the parties shall be governed by and construed under the laws of the State of Colorado.

Complaint, ¶ 5, docket #2.  Tecsys counters that the Licensing Agreement's forum selection clause does not apply to Claims 1 and 2 since those claims involve pre-contractual conduct and that, otherwise, USW has failed to plead facts supporting this Court's jurisdiction over Tecsys for the claims.  The Court disagrees.

"A forum selection clause is a contractual provision agreed to by private parties that constitutes the parties' agreement as to the place of the action where the parties will bring any litigation related to the contract."  *Cagle v. Mathers Family Trust*, 295 P.3d 460, 464 (Colo. 2013). "Where a forum selection clause agreed to during arms-length negotiations by sophisticated parties, specifies venue and jurisdiction with mandatory or obligatory language, the clause is presumptively valid and must be enforced unless the party seeking to avoid the agreed-to forum demonstrates that enforcement would be unreasonable under the circumstances."  *Plum Creek Wastewater Auth. v. Aqua-Aerobic Sys., Inc.*, 597 F. Supp. 2d 1228, 1230 (D. Colo. 2009) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)); *see also Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1158 -59 (Colo. App. 2006).  Here, the Licensing Agreement provides:

> TECSYS AND CUSTOMER HEREBY CONSENT AND AGREE THAT JURISDICTION AND VENUE FOR ANY CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATED TO THIS AGREEMENT OR ANY ORDER SHALL BE PROPERLY AND EXCLUSIVELY IN THE STATE, PROVINCIAL OR FEDERAL COURTS LOCATED IN AND FOR DENVER COUNTY, COLORADO. CUSTOMER AND TECSYS EXPRESSLY WAIVE ANY AND ALL RIGHTS WHICH THEY MAY HAVE OR WHICH MAY HEREAFTER ARISE TO CONTEST THE PROPRIETY OF SUCH CHOICE OF JURISDICTION AND VENUE.

U.S. Software License, Support & Services Agreement, ¶ 15, docket #2-2.

The parties in this case do not dispute the enforceability of the Agreement's forum selection

clause but, rather, its scope.  While Tecsys contends that any conduct alleged to have occurred before the contract's formation is excluded from the clause, USW argues that Claims 1 and 2 and their supporting allegations are related to the Agreement and, therefore, the Court has jurisdiction over Tecsys for the claims.

When a plaintiff's tort claims involve the same operative facts as the parallel breach of contract claim, the tort claims come within the purview of the contract's forum selection clause. *Adams Reload Co., Inc. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1061 (Colo. App. 2005) (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (adopting the First Circuit's test for determining the scope of a forum selection clause - whether tort claims involve the same operative facts as a parallel claim for breach of contract)).  In analyzing a choice of law issue (as opposed to choice of forum), the Tenth Circuit made the following observation about forum selection clauses: "generally speaking, other circuits applying state law have determined a contract forum provision cannot apply to tort claims unless the provision is broad enough to be construed to cover such claims or the tort claims involve the same operative facts as a parallel breach of contract claim." *Cobank, ACB v. Reorganized Farmers Co-op Ass'n*, 170 F. App'x 559, 567 (10th Cir. 2006) (citing cases in the First, Second, Fourth, Fifth, Seventh, Eighth and Ninth Circuits, including *Terra, Int'l, Inc.*, *supra*).

With these standards in mind, the Court concludes that USW's allegations supporting its Claim 1 for fraudulent inducement and Claim 2 for negligent misrepresentation involve the same operative facts as a parallel breach of contract claim.  Both claims involve essentially the same allegations: USW alleges that Tecsys made certain misrepresentations of material fact and failed to disclose other facts regarding the capabilities of the software, and Tecsys' abilities to implement and

manage the software, in an effort to induce USW to purchase the software.  The purchase, allegedly, is the transaction giving rise to the Licensing Agreement.  USW's breach of contract claim, then, incorporates the allegations made in Claims 1 and 2 and alleges "Tecsys breached this agreement by failing to provide a software solution that met USW's business needs and requirements in accordance with the promises Tecsys made to USW during the sales cycle."  Complaint, ¶ 89, docket #2.  Because Claims 1 and 2 are based on the same operative facts as the parallel breach of contract claim, the Court finds they come within the purview of the Licensing Agreement's forum selection clause, and recommends that the District Court find USW has established specific personal jurisdiction over Tecsys for these claims.  *See Adams Reload Co., Inc.*, 143 P.3d at 1067 (finds that claims for  breach of contract; promissory estoppel; negligence; false representation; breach of fiduciary duty; negligent misrepresentation-concealment; violation of the Colorado Consumer Protection Act (CCPA); violation of the covenant of good faith and fair dealing; and unjust enrichment all came within the purview of the challenged forum selection clause).

C.    Fair Play and Substantial Justice

Having concluded that USW has met its burden to satisfy Colorado's long-arm statute, the Court must next determine whether the exercise of specific personal jurisdiction over Tecsys is reasonable.

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice requires an analysis of the five factors set forth in *ClearOne Communs., supra*: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the

several states in furthering fundamental substantive social policies.  "The strength of these factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Conversely, the factors may be so weak that even though minimum contacts are present, subjecting the defendant to jurisdiction in that forum would offend due process."  *OMI Holdings, Inc.*, 149 F.3d at 1095-96 (citations omitted).

With respect to the first factor, Tecsys makes no argument.  Tecsys "bears the burden of presenting a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable."  *ClearOne Communs., Inc.*, 643 F.3d at 764 (emphasis added).  Here, Tecsys is represented by counsel in Colorado, and electronic filing and communications have greatly simplified out-of-state litigation.  *See Hollander v. Zito*, 11-cv-00499-MSK, 2011 WL 5834688, at *3 (D. Colo. Nov. 21, 2011).  The Court finds that the first factor weighs in favor of finding personal jurisdiction over Tecsys reasonable.

Second, Colorado would likely have a strong interest in resolving an action involving a business transaction against one of its residents.  In addition, USW, a Colorado resident, certainly would be best served by adjudicating its claims in Colorado.  Thus, the second and third factors weigh in favor of a reasonableness finding.

There is no evidence or argument concerning the remaining factors, but the Court perceives nothing regarding these factors that would render the exercise of jurisdiction over Tecsys unreasonable.  Therefore, the fourth and fifth factors are neutral.

In weighing the required factors, the Court concludes that personal jurisdiction over Tecsys for Claims 1 and 2 is reasonable in light of the circumstances in this case.  Accordingly, the Court recommends finding that, under these circumstances and the prevailing case law, Tecsys' contacts

with Colorado are sufficient to establish specific jurisdiction necessary to hale Tecsys into Colorado.

## II.     Failure to State Claims

Pursuant to Rule 12(b)(6), Tecsys contends Claims 1, 3 and 4 are untimely; Claims 5 and 6 are precluded, in part, by the language of the Licensing Agreement; USW fails to allege Tecsys had any discretion in the performance of the Licensing Agreement necessary for Claim 7; and USW fails to allege a confidential relationship necessary for Claim 8.  The Court will address each challenged claim in turn.

### A.     Claim 1

As set forth above, Claim 1 alleges Tecsys fraudulently induced USW to execute the License Agreement.  Tecsys argues that, because all conduct alleged to support Claim 1 occurred before April 10, 2010, the date the Licensing Agreement was executed, the claim is barred by the statute of limitations.  USW counters that it did not discover the fraud until well after the execution of the Agreement when the system did not work and Tecsys failed or refused to fix the problems.  USW also contends that Tecsys is estopped from asserting a statute of limitations defense, as Tecsys knew the software was unsuitable but persuaded USW to maintain and attempt to modify the software through the statute of limitations period.  USW asserts it did not become aware of the fraud until Tecsys' CEO admitted in an email to USW's Kathy Lofgren that it had a software program "with a platform that is easier to use, simpler to implement, run on SQL-server and will ultimately be lower cost."  Tecsys replies that the equitable tolling doctrine is "not favored" and that USW fails to meet the elements necessary for the doctrine, particularly in failing to allege that Tecsys affirmatively and wrongfully impeded USW's ability to bring the claim.

While the statute of limitations is an affirmative defense, if it is clear from the complaint that

the right to bring an action has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Aldrich v. McCulloch Prop., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1287 (D. Colo. 2009) (noting that "once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to [the p]laintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date.").

Colorado's three-year statute of limitations for fraud, misrepresentation, concealment, and deceit, Colo. Rev. Stat. § 13-80-101(1)(c), governs such claims. *Conrad v. The Educ. Resources Institute*, 652 F. Supp. 2d 1172, 1184 (D. Colo. 2009) (citing *Full Draw Productions v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1010 (D. Colo. 2000)). Such a cause of action accrues as of the date the fraud "is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(3).

Here, the Complaint was filed on March 17, 2014; accordingly, a claim that accrued before March 17, 2011 would be barred by the statute of limitations. Claim 1 alleges Tecsys fraudulently induced USW to execute the Licensing Agreement on April 30, 2010. Specifically, USW alleges that in meetings held on various dates listed in 2008-2010, Tecsys representatives made certain misrepresentations of material fact (Complaint, ¶¶ 45, 46, 47) and failed to disclose other material facts (*id.*, ¶ 48) to persuade USW to enter into the agreement. USW alleges that it relied on these misrepresentations and omissions and that, if it had known the truth, it would have never purchased the software. Complaint, ¶ 50. In light of these allegations, it appears on its face that the fraudulent inducement claim is barred by the statute of limitations; thus, USW has the burden of establishing a factual basis for tolling the statute.

24

USW first argues, however, that it did not discover the fraud "until well into the software implementation and only after USW attempted to actually use the defective and misrepresented software." Response, docket #17 at 8. USW contends "[t]he Complaint properly states that the discovery of the fraud plainly occurred after April 30, 2010, for if the relevant facts had been truthfully disclosed by Tecsys to USW prior to execution of the contract, USW would never have entered into the License Agreement." *Id.* at 7. However, the Complaint itself does not allege a date (or even a time period) during which USW discovered the fraud. In its response brief, USW contends that "the truth finally came to light in 2013" when Tecsys' CEO advised USW to upgrade to the "9.x series software." *Id.* at 9 (citing Complaint, ¶ 14). The cited paragraph, though, does not identify the date of the communication (email), but simply alleges the email was "sent well into the implementation." *See* Complaint, ¶ 14.

Considering the allegations of the Complaint as a whole and taking them as true, as I must for a Rule 12(b)(6) analysis, the Court finds that USW could have discovered the misrepresentations and omissions through reasonable diligence *after* March 17, 2011, following the installation and implementation of the software. An exhibit attached to the Complaint[4] titled, Statement of Work, is undated but "is a formal, approved document used to guide both project execution and project control." Docket #2-3 at 4. The referenced project "consists of the successful migration of business activities conducted by United States Welding to the *EliteSeries* [software] application." *Id.* at 5.

---

[4] "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

Although the Statement itself appears to be undated and does not specify an actual "migration" or implementation date, it provides in pertinent part:

> The following assumptions must hold true if the implementation date is to be considered realistic: 1. For the original intent (which was a December 1st go-live), project activities should have started on or before April 12th 2010. Due to a later start, the new target was set to May 2nd 2011.

*Id.* at 7. This information raises the possibility that the software program was not implemented until in or around May 2011, within the statute of limitations. Certainly, it is logical that USW could not have discovered any of the alleged misrepresentations and omissions regarding the software's capabilities and suitability *before* the implementation of the software. Accordingly, the Court finds that a genuine dispute exists concerning when USW discovered or reasonably could have discovered the facts underlying Claim 1, and that such dispute cannot be determined under a Rule 12(b)(6) analysis.

Furthermore, USW argues that, due to its improper conduct, Tecsys is equitably "estopped" from using the statute of limitations doctrine as a defense. Under Colorado law, equitable tolling is applied in two distinct situations: (1) when "defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner"; and (2) when "truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000); *see also Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) ("an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts.") (quoting *Dean Witter Reynolds, Inc. v. Harman*, 911 P.2d 1094, 1099 (Colo. 1996)). In practice, however, Colorado courts rarely allow equitable tolling. *Escobar*, 668 F. Supp. 2d at 1272.

In *Dean Witter Reynolds*, the Colorado Supreme Court noted that it had applied the equitable tolling doctrine "where the defendant's wrongful conduct prevented the plaintiff from asserting his or her claims in a timely manner" and cited a 1987 case holding the statute of limitations period subject to equitable tolling where the defendant fraudulently concealed facts underlying the wrong. *Dean Witter Reynolds, Inc.*, 911 P.2d at 1096 (citing *First Interstate Bank v. Piper Aircraft Corp.*, 744 P.2d 1197 (Colo. 1987)).  The elements necessary to demonstrate equitable tolling are "(1) the party to be estopped must know the relevant facts; (2) the party to be estopped must intend that his or her conduct be acted on, or act in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel must be ignorant of the relevant facts; and (4) the party asserting estoppel must rely on the other party's conduct to his or her detriment." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007).

Here, USW contends that Tecsys "engaged in a continued program of deception where it intentionally persuaded USW to continue to implement, maintain and modify the software, despite Tecsys knowing that the software was unsuited for USW's business."  Response, docket #17 at 8. The Complaint alleges that Tecsys' conduct was committed "knowingly" (Complaint, ¶ 52), that Tecsys made the alleged misrepresentations and omissions "to induce USW to enter into the Agreement" (*id.*, ¶ 50), that had USW known the truth about the unsuitability of the software, it "never would have purchased the software" (*id.*), and that "USW justifiably relied upon Tecsys' misrepresentations and omissions in entering the Agreement" (*id.*).

Taking USW's allegations as true and construing the Complaint as a whole, the Court finds a genuine dispute as to whether Tecsys' alleged concealment of facts concerning the suitability of the subject software prevented USW from timely filing its claim, and that such dispute cannot be

27

resolved in a Rule 12(b)(6) analysis.

Accordingly, because genuine issues of material fact exist concerning when USW discovered the facts underlying Claim 1 and whether Tecsys' conduct prevented USW from bringing its claim in a more timely manner, the Court recommends that the District Court **deny** Tecsys' motion to dismiss Claim 1 as barred by the statute of limitations.

    B.    <u>Claims 3 and 4</u>

Tecsys argues that Claim 3 for Gross Negligence and Claim 4 for Willful Misconduct are duplicative of Claim 2 for Negligent Misrepresentation and, alternatively, are barred by the statute of limitations and, thus, should be dismissed.  USW counters that Claims 3 and 4 sound in contract, not tort, and involve facts that took place after the agreement's execution, while Claim 2 involved conduct that occurred pre-agreement.  Tecsys replies first that USW did not challenge its statute of limitations defense and therefore concedes that the claims are time-barred.  Further, Tecsys contends that the allegations supporting Claims 3 and 4 make no mention of the agreement and USW's requests for punitive damages belie its position that the claims sound in contract.  Finally, Tecsys argues that a "willful and wanton" breach of contract is a theory, not an independent claim, which does not apply to this case and if it is a claim, it is duplicative of the breach of contract claim.

First, the Court rejects Tecsys' statute of limitations theory for the same reasons set forth above in the analysis of Claim 1.  Taking the allegations as true and considering the Complaint as a whole, the Court finds that the allegations underlying Claims 3 and 4 involve conduct that occurred after the Agreement's execution and after implementation of the software (Tecsys "ignored USW's requests to *modify* the EliteSeries software, recklessly failed to *maintain* the software and the Oracle database, failed to provide a *fully functioning* software product, [and] failed to provide *adequate*

28

*training*"). *See* Complaint, ¶68 (emphasis added); *see also* ¶ 78 ("Tecsys intentionally failed to *modify and maintain* the EliteSeries software; Tecsys intentionally misrepresented the suitability of the EliteSeries software for USW's business; concealed the limitations and deficiencies of the EliteSeries software for USW's business; and provided USW with *consultants* whom Tecsys knew, or should have known, were incompetent, incapable and inexperienced.") (emphasis added).   A genuine dispute of material fact exists concerning when USW discovered, or reasonably could have discovered, the facts underlying Claims 3 and 4.

In light of the Court's construction of the allegations supporting Claims 3 and 4, the Court also rejects Tecsys' argument that the claims are duplicative of Claim 2, which clearly involves conduct that occurred pre-agreement.   Therefore, the Court will proceed to consider Tecsys' arguments that Claims 3 and 4 are not independent claims for relief.

Citing a 1987 District of Colorado case, Tecsys argues that a "gross negligence claim is merely a reaffirmation of the claim for negligence" and, thus, USW's Claim 3 is duplicative of Claim 2.   Motion, docket #14 at 12 (citing *Dukeminier v. K-Mart Corp.*, 651 F. Supp. 1322, 1323 (D. Colo. 1987)).   However, years after *Dukeminier* in 1992, the Colorado Supreme Court discussed the differences between gross and ordinary negligence to determine whether the comparative negligence statute could be applied when the jury finds willful and wanton conduct.   The court noted:

> The demarcation line between the terms [willful and wanton misconduct, willful and wanton negligence, gross negligence, reckless conduct, and reckless negligence] has led to the conclusion that the terms describe a form of aggravated negligence that differs in quality rather than degree from ordinary lack of care. Our exemplary damages statute recognizes the distinction between negligence and willful and wanton conduct providing for the recovery of exemplary damages in addition to compensatory damages, and prevents contribution between defendants in applicable cases.

*White v. Hansen*, 837 P.2d 1229, 1233 (Colo. 1992) (citations omitted).   In other words, the Colorado Supreme Court confirms that to recover exemplary damages under Colorado law for a negligence claim, a plaintiff must allege (and demonstrate) willful and wanton conduct.   *Id.* Accordingly, the Court finds that gross (or willful and wanton) negligence is an independent claim for relief seeking exemplary damages, in addition to actual damages, in Colorado.   *See id.*; *see also* Colo. Jury Instr. 4th § 9:30 (2009).

In fact, in Claim 3, USW seeks both compensatory and exemplary damages for "Tecsys' negligent acts [ ] committed in conscious disregard of USW's needs and welfare."   Complaint, ¶ 72. However, in its response brief, USW conclusively asserts that its "willful misconduct and gross negligence claims sound in contract, not tort."   Response, docket #17 at 10.   Consequently, the Court must determine whether USW's gross negligence and willful misconduct claims are proper independent *contract* claims in Colorado.

Although USW is correct that "Colorado recognizes an action for willful and wanton breach of contract ... outside of the insurance context" (citing *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 971 (Colo. App. 2012)), it cites nothing supporting the existence of a "grossly negligent breach of contract" claim and the Court has found nothing in support.   Even if such claim existed, however, the Court finds that Claims 3 and 4 are sufficiently similar (with respect to the conduct alleged to support the claims) to be duplicative of each other.   However, due to its allegations of intentional and knowing misconduct, the Court finds Claim 4 is not duplicative of Claim 5 for Breach of Contract.

Tecsys is correct, though, that exemplary damages are not recoverable for a claim for willful and wanton breach of contract.   *Core-Mark*, 300 P.3d at 971 n.6.   Claim 4's request for exemplary

damages must be dismissed.

Accordingly, the Court concludes that USW sufficiently alleges Claim 4 for Willful Misconduct (willful and wanton breach of contract), but is not permitted to seek exemplary damages for such claim. In addition, USW fails to plausibly allege Claim 3 for Gross Negligence. The Court recommends that the District Court **grant** Tecsys' motion to dismiss Claim 3 and the request for exemplary damages in Claim 4, and **deny** the motion to dismiss Claim 4 in its entirety.

C.      Claims 5 and 6

Claim 5 alleges Breach of Contract and Claim 6 alleges Breach of Express and Implied Warranties. Tecsys argues "the License Agreement permissibly, conspicuously, and expressly disclaims the warranties the Complaint alleges to have been breached" and, thus, Claims 5 and 6 should be dismissed "in part." Motion, docket #14 at 14-15. Tecsys points to the allegations that Tecsys failed "to provide software that would 'be functional, meet USW's business needs, be implemented and maintained by competent and experience[d] personnel'" and misrepresented that "the EliteSeries software was a turnkey, out-of-the-box system specifically designed for the gas and welding industry." *Id.* at 15. USW counters that Tecsys' single cited case is inapplicable and that USW avers Tecsys breached its express and implied warranties *despite* the Agreement's disclaimer. Response, docket #17 at 14. USW also contends that the License Agreement is not a fully integrated document and its claims extend beyond the agreement to include Tecsys' obligations in both the Statement of Work and the Project Plan, neither of which contain a disclaimer. Tecsys replies that USW's response "does nothing to refute the clear applicability of the disclaimer to any alleged implied ... or any express warranties not enumerated in the License Agreement." Reply, docket #19 at 11. Tecsys also points to an integration clause to rebut USW's statement that the Agreement is

not fully integrated.

First, the Court finds that Tecsys' mere "lumping" of Claim 5 into its argument without specifying which part of the claim should be dismissed is insufficient to support the motion to dismiss the claim.  Tecsys' argument focuses specifically on "warranties" expressed or implied in the Agreement and quotes allegations made in Claim 6.  A review of Claim 5 reveals that the claim primarily involves conduct allegedly violative of the Agreement's sections 8 (Software Support Services) and 9 (Services), both of which describe obligations and responsibilities of the parties. *See* Complaint, ¶¶ 90-93.  Apparently, such services are more fully described in the Statement of Work and Order Form of the Agreement. *Id.*, ¶91.  Taking the allegations as true and construing the claim as a whole, the Court finds Tecsys' arguments concerning warranties does not apply to Claim 5 to the extent it alleges breaches of Sections 8 and 9, and recommends that the District Court **deny** Tecsys' motion to dismiss Claim 5 as to any breach of service obligations or responsibilities.

However, Claim 5 also mentions an alleged breach of Section 10 of the Agreement, which governs Limited Warranties and Disclaimers.  In this respect, the Court will consider Tecsys' argument for this portion of Claim 5 in analyzing whether Claim 6 should be dismissed.

For Claim 6, USW quotes from Section 10.2 of the License Agreement, setting forth an express warranty by Tecsys, and alleges that Tecsys made other "various express and implied warranties in the Agreement" including that set forth in Section 9.1 of the Agreement.  Complaint, ¶¶ 97, 98.  USW then asserts breach of "express and implied warranties to USW including, without limitations, that the EliteSeries software would be functional, meet USW's business needs, be implemented and maintained by competent and experienced personnel and that the EliteSeries software was a turnkey, out-of-the-box system specifically designed for the gas and welding

industry." Complaint, ¶ 99.

In Colorado, an express warranty can be created by the seller through, *inter alia*, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *Pegasus Helicopters, Inc. v. United Techs. Corp.*, 35 F.3d 507, 511 (10th Cir. 1994) (citing Colo. Rev. Stat. § 4-2-313(1)(a)). Such an affirmation or promise creates an express warranty "that the goods shall conform to the affirmation or promise." *Id.* Similarly, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* (citing Colo. Rev. Stat. § 4-2-313(1)(b)). No particular words are necessary to the existence of an express warranty. *Id.* (citing Colo. Rev. Stat. § 4-2-313(2)). To state a claim for breach of express warranty, a plaintiff must allege that: 1) a warranty existed; 2) the defendant breached the warranty; 3) the breach proximately caused the losses claimed as damages; and 4) timely notice of the breach was given to defendant. *See Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citing *Palmer v. A.H.Robins Co., Inc.*, 684 P.2d 187 (Colo. 1984)).

Colorado recognizes two types of "implied" warranties: merchantability (Colo. Rev. Stat. § 4-2-314) and fitness for a particular purpose (Colo. Rev. Stat. § 4-2-315). First, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Colo. Rev. Stat. § 4-2-314(1). To be "merchantable," goods must be fit for their ordinary purpose. *Fiberglass Component Prod.*, 983 F. Supp. at 958. Second, to establish an implied warranty of fitness for a particular purpose, the plaintiff must allege that: a) the product was to be used by the buyer for a "particular purpose" different from its ordinary purpose; b) the seller knew of the buyer's "particular purpose;" c) the seller knew that the buyer was relying

33

on the seller's skill to provide a product that would satisfy the "particular purpose;" and d) the buyer in fact relied on that skill.  *Id.* at 955-56 (citing Colo. Rev. Stat. § 4-2-315).

Tecsys does not challenge the sufficiency of USW's breach of express warranty claim to the extent it alleges a breach of Section 10.2 of the Licensing Agreement.  Motion, docket #14 at 14 n.2. However, Tecsys argues that Section 10.3 conspicuously and expressly disclaims all other warranties, express or implied, and thus, bars the remainder of Claim 6.  Section 10.3 appears in all capital letters, unlike the provisions directly above and below it, and provides:

> EXCEPT AS EXPRESSLY STATED IN SECTIONS 10.1 AND 10.2 ABOVE, THERE ARE NO WARRANTIES OR CONDITIONS (EXPRESS OR IMPLIED, ARISING BY STATUTE OR OTHERWISE IN LAW OR FROM A COURSE OF DEALING OR USAGE OF TRADE) FOR THE TECSYS SOFTWARE, OTHER PRODUCTS, SOFTWARE SUPPORT OR OTHER SERVICES OR GOODS FURNISHED HEREUNDER OR HEREWITH. TECSYS DISCLAIMS ALL IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, MERCHANTABLE QUALITY OR FITNESS FOR ANY PURPOSES, PARTICULAR, SPECIFIC OR OTHERWISE. TECSYS DOES NOT WARRANT THAT THE FUNCTIONS CONTAINED IN THE TECSYS SOFTWARE WILL MEET CUSTOMER'S REQUIREMENTS OR THAT THE OPERATION OF THE TECSYS SOFTWARE WILL BE UNINTERRUPTED OR ERROR-FREE. CUSTOMER ACKNOWLEDGES HAVING INVESTIGATED THE TECSYS SOFTWARE AND HAS DETERMINED THAT THE TECSYS SOFTWARE AS DESCRIBED IN APPLICABLE USER MANUALS IS SUITABLE FOR CUSTOMER'S PURPOSES. CUSTOMER FURTHER ACKNOWLEDGES THAT THE TECSYS SOFTWARE IS A BUSINESS TOOL THE CORRECTNESS AND USABILITY OF WHOSE OUTPUT IS CUSTOMER'S RESPONSIBILITY.

License Agreement, § 10.3, docket #2-2.

In Colorado, a disclaimer "must be clear, unequivocal, and the result of a genuine agreement between the parties" and, to be effective, it must appear that the disclaimer "was clearly brought to the attention of the buyer."  *Cherokee Invest. Co. v. Violes*, 443 P.2d 727, 729 (Colo. 1968); *but see Ray L. Atchison Construction Co. v. Sossaman*, 717 P.2d 988, 990 (Colo. App. 1986) (finding this standard applicable only to protect consumer buyers in transactions with merchant sellers).  In this

case, there is no dispute as to the effectiveness of the disclaimer found at § 10.3 of the Licensing Agreement.

Accordingly, the Court first finds that, with respect to USW's reference to Section 9.1 of the Agreement as an "express warranty" in Claim 6, the claim fails.  To support its claim, USW must allege that a warranty existed.  *Fiberglass Component Prod.*, 983 F. Supp. at 953.  However, the disclaimer clearly and unambiguously provides that no warranties exist except for those expressed in Section 10.  Likewise, USW fails to identify any other "express" warranty that supports its remaining allegations.

As for "implied" warranties, Colorado law requires that "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" Colo. Rev. Stat. § 4-2-316(2).  Again, in this case, there are no disputes as to the conspicuousness or effectiveness of Section 10.3.

To the extent that USW believes its allegations in Claim 6 that "the EliteSeries software would be functional, meet USW's business needs, be implemented and maintained by competent and experienced personnel and that the EliteSeries software was a turnkey, out-of-the-box system specifically designed for the gas and welding industry" constitute implied warranties, the Court disagrees.  First, USW fails to identify which promise, if any, warrant that the software was "merchantable" under Colo. Rev. Stat. § 4-2-314 or warrant that the software was "fit for a particular purpose" under Colo. Rev. Stat. § 4-2-315.  Next, to the extent that any of the allegations could be

construed as constituting an implied warranty for merchantability, the Court finds that Section 10.3 of the Licensing Agreement conspicuously and clearly disclaims such implied warranties pursuant to Colo. Rev. Stat. § 4-2-316(2).  To the extent that any of the allegations could be construed as constituting an implied warranty for fitness for a particular purpose, Section 10.3 also properly disclaims such warranties; in addition, the Plaintiff fails to allege the elements necessary to state a claim for breach of implied warranty for fitness for a particular purpose, as set forth in *Fiberglass Component Prod.*, *supra*.

USW defends Claim 6 by arguing, in a conclusory fashion and without any legal support, that it properly alleges "Tecsys breached its express and implied warranties *despite* the disclaimer." Response, docket #17 at 14 (emphasis in original).   USW does not explain how Claim 6 is saved by this contention, and the Court infers nothing from USW's response that supports any ability to allege claims properly disclaimed by agreement.

Accordingly, the Court finds that USW plausibly alleges Claim 5 for breach of contract, except to the extent that it alleges a breach of Section 10 of the License Agreement (which is duplicative of Claim 6).  Also, for Claim 6, USW plausibly alleges a breach of the express warranty in Section 10 of the License Agreement.  However, in all other respects, USW fails to allege breaches of "express and implied" warranties in Claim 6.  The Court recommends that the District Court **grant** Tecsys' motion to dismiss that portion of Claim 5 alleging a breach of Section 10 of the License Agreement and **deny** the motion to dismiss the remainder of Claim 5, and to **grant** Tecsys' motion to dismiss all portions of Claim 6 **except** the alleged breach of Section 10 of the License Agreement.

D.     Claim 7

Claim 7 alleges Breach of the Duty of Good Faith and Fair Dealing. Tecsys argues that the claim fails because USW has not alleged Tecsys had any discretion in the performance of the License Agreement. USW counters that the Order Form and Statement of Work attached to the Agreement reflect Tecsys agreed to numerous responsibilities and obligations, for which it had substantial or complete discretion, as well as the parties' understanding that USW had a diminished role in the implementation of the software. Tecsys replies that USW fails to allege or argue that Tecsys had discretion over, or to determine, the actual terms of the contract.

"Every contract contains an implied duty of good faith and fair dealing, requiring the parties to the agreement to perform their contractual obligations in good faith and in a reasonable manner." *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 646 (Colo. App. 1999) (citing *Crown Life Insurance Co. v. Haag Ltd. P'ship*, 929 P.2d 42 (Colo. App. 1996)). "The purpose of the duty is to effectuate the intentions of the parties or to honor their reasonable expectations as expressed in their agreement." *Id.* (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo. 1995)).

Such duty may be relied upon only when one party has discretionary authority to perform certain contract terms, including discretionary acts. *Id.* "Thus, a breach of the duty occurs when one party uses discretion conferred by the contract to act dishonestly or to act outside the scope of accepted commercial practices to deprive the other party of the benefit of the contract." *Id.* (citing *Wells Fargo Realty Advisors Funding, Inc. v. Uioli*, Inc., 872 P.2d 1359 (Colo. App. 1994)).

USW alleges in Claim 7, among other things, that "Tecsys failed to perform the Agreement, in good faith, by ... failing to perform its consulting, implementation, maintenance, support and modification obligations under the Agreement, despite its knowledge that USW was relying on Tecsys' expertise and superior knowledge." Complaint, ¶ 105. In support of this allegation, USW

points to the Order Form attached to the Agreement, which sets forth several obligations on the part of Tecsys to coordinate and implement the software program and describes the limited role USW had in such implementation. Moreover, USW contends the Statement of Work specifies the parties' understanding that USW had limited resources and knowledge, and provides that Tecsys personnel would "manage the entire project." Statement of Work, docket #2-3 at 5.

The Court agrees. Importantly, Tecsys does not argue that the Statement of Work and the Order Form are not part of or integrated into the Agreement. Thus, taking the allegations as true for purposes of the present motion, the Court finds that the Statement of Work sets forth the agreed responsibilities and obligations of the parties with respect to the migration and implementation of the EliteSeries software for USW. These documents demonstrate that Tecsys had discretion over certain terms of the agreement including, in particular, Section 3.1.2 Tecsys' Delivery Roles and Responsibilities and Section 3.1.3 Tecsys' Main Tasks. *Id.* at 9-11.

This Court recommends that the District Court find USW plausibly alleges Tecsys breached its duty of good faith and fail dealing to perform obligations over which it had discretion, and deny Tecsys' motion to dismiss Claim 7.

E.   <u>Claim 8</u>

Claim 8 alleges Breach of Fiduciary Duty. Tecsys argues that USW fails to allege a pre-contractual "confidential relationship" necessary to demonstrate a fiduciary duty, in that USW's allegations involve failures to perform under the contract and the Agreement itself was the result of an arms-length transaction between two business entities. USW counters that its allegations reflect it relied extensively on Tecsys' expertise, experience and advice on the software implementation and that Tecsys was aware of such reliance and assumed a duty to represent USW's interest.

38

Here, the Court must determine whether USW's allegations plausibly describe a fiduciary relationship. "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012) (en banc) (quoting *Moses v. Diocese of Colo.*, 863 P.2d 310, 321 (Colo. 1993)). Independent legal duties of care owed by a fiduciary include a duty to act with utmost loyalty on behalf of, and for the benefit of, the other party. *Id.* (citing *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1289 (Colo. 1996)). Other than those fiduciary relationships recognized as a matter of law, such as attorney-client or trustee-trust beneficiary, the Colorado Supreme Court has recognized other fiduciary relationships where one party occupied a superior position relative to another and assumed a duty to act in the dependent party's best interest and where one party had extensive influence and control over the other's interests. *Id.*

"Fiduciary relationships that derive from a special relationship of trust, reliance, influence, and control are distinguishable from business relationships involving parties dealing at arm's length for mutual benefits." *Id.* (citing *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 730 (10th Cir. 1991) ("[P]arties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties.") and 37 C.J.S. Fraud § 11 (2008) ("Most business relationships or contractual relationships ... do not by themselves create fiduciary obligations, and fiduciary obligations should be extended reluctantly to commercial or business transactions.")).

Here, although USW alleges Tecsys had superior knowledge regarding its software and USW trusted Tecsys with implementation and maintenance of the software program, there is nothing indicating that the parties had more than a conventional business relationship. No allegations reflect

39

that Tecsys assumed a duty to act primarily in USW's best interests.   USW and Tecsys are commercial companies and there are no allegations reflecting any obvious disparity in power, wealth or commercial knowledge.   In fact, if the Court were to adopt USW's description of its relationship with Tecsys as "fiduciary," then *any* company providing its knowledge, expertise and services of products it manufactures could be said to have a fiduciary duty to buyers of its products and services. "[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231 (E.D. N.Y. 2007)  (finding that no fiduciary relationship existed between the plaintiff-licensor and the defendant-licensee; defendant was not a fiduciary simply because it had superior knowledge of its licensing activity and was entrusted with distribution of the plaintiff's product); *see also Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F. Supp. 1535, 1546-47 (D. Kan. 1993) (holding that a license agreement between a patent holder and a licensee did not create a fiduciary relationship where the parties were negotiating at arms length).

USW appears to contend that determination of the fiduciary relationship is not proper in a Rule 12(b)(6) analysis.   While, certainly, there may be factual disputes concerning disparity between the parties or whether a superior party acted in the best interests of the inferior party, in this case the allegations are insufficient to show plausibly that Tecsys assumed a fiduciary duty to USW.   *See, e.g., Atlantis Info.,* 485 F. Supp. 2d at 232 (granting motion to dismiss breach of fiduciary duty claim).   Therefore, the Court recommends that the District Court grant Defendant's motion to dismiss Claim 8 for breach of fiduciary duty.

## III.   Request to Strike

Tecsys argues that USW's requests for punitive damages for Claims 1, 2, 3, 4 and 8 should

be stricken as in contravention of Colo. Rev. Stat. § 13-21-102(1.5).  USW did not respond.

In Colorado, exemplary or punitive damages are available only by statute.  Colorado's general exemplary damages provision states as follows:

> A claim for exemplary damages in an action governed by this section may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by this section may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue. After the plaintiff establishes the existence of a triable issue of exemplary damages, the court may, in its discretion, allow additional discovery on the issue of exemplary damages as the court deems appropriate.

Colo. Rev. Stat. § 13-21-102(1.5)(a).  Exemplary or punitive damages are appropriate only if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a).  The statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b).

Thus, for an amendment seeking exemplary damages to be proper, the court must find a plaintiff establishes *prima facie* proof of a triable issue that defendants purposefully behaved in a reckless manner "without regard to consequences, or of the rights and safety" of the plaintiff.  "The existence of a triable issue on punitive damages may be established through discovery, by evidentiary means, or by an offer of proof."  *Leidholt v. Dist. Court in & for the City and Cnty. of Denver*, 619 P.2d 768, 771 (Colo. 1980).  The plaintiff must articulate "[a] reasonable likelihood that the issue will ultimately be submitted to the jury for resolution" to demonstrate the requisite *prima facie* proof of a triable issue.  *Id.*

Here, there is no dispute that USW brought its requests for punitive damages at the initial

stage in the original Complaint. Discovery commenced on June 20, 2014 in this case, but there has been no amendment to the pleading. Accordingly, the Court must recommend that the District Court grant Tecsys' motion to strike USW's requests for punitive damages in Claims 1, 2, 3, 4 and 8.[5] This recommendation, of course, does not prohibit USW from seeking to amend its pleading to add requests for punitive damages in accordance with Colo. Rev. Stat. § 13-21-102.

## CONCLUSION

Accordingly, for the reasons set forth herein, the Court respectfully RECOMMENDS that Defendant Tecsys' Renewed Motion to Dismiss Plaintiff's Complaint and Renewed Motion to Strike [filed September 5, 2014; docket #32] be **granted in part and denied in part** as follows:

(1)     Deny Tecsys' motion pursuant to Fed. R. Civ. P. 12(b)(2) and find that the Court has personal jurisdiction over Tecsys for Claims 1 and 2;

(2)     Deny Tecsys' motion to dismiss Claim 1 as barred by the statute of limitations;

(3)     Grant Tecsys' motion to dismiss Claim 3 and the request for exemplary damages in Claim 4, and deny the motion to dismiss Claim 4 in its entirety;

(4)      Grant Tecsys' motion to dismiss that portion of Claim 5 alleging a breach of Section 10 of the License Agreement and deny the motion to dismiss the remainder of Claim 5;

(5)     Grant Tecsys's motion to dismiss all portions of Claim 6 except the alleged breach of Section 10 of the License Agreement;

(6)     Deny Tecsys' motion to dismiss Claim 7;

(7)     Grant Tecsys' motion to dismiss Claim 8; and

---

[5]Of course, this recommendation applies only to the extent the District Court finds Claims 1, 2, 3, 4 and 8 survive the present motion to dismiss.

(8)     Grant Tecsys' motion to strike the punitive damages requests, to the extent they survive, in

Claims 1, 2, 3, 4 and 8.

Respectfully submitted this 1st day of December, 2014, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge